UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                      No. 03-CR-80074-1

vs.                                                 Hon. Gerald E. Rosen

WILLIAM BARNWELL,

                    Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTIONS TO DISMISS ON DOUBLE JEOPARDY
AND SPEEDY TRIAL ACT GROUNDS

              At a session of said Court, held in
              the U.S. Courthouse, Detroit, Michigan
              on _____June 18, 2008_____

              PRESENT:   Honorable Gerald E. Rosen
                         United States District Judge

I. INTRODUCTION

       This criminal matter was reassigned to this Court following Chief Judge

Friedman's *sua sponte* recusal of himself after the case was remanded to this Court for a

new trial pursuant to the Sixth Circuit's September 7, 2007 Mandate.  The case is

presently before the Court on two motions filed by Defendant Barnwell on January 25,

2008: a "Motion to Dismiss Indictment Pursuant to the Double Jeopardy Clause of the

Fifth Amendment" and a "Motion to Dismiss Indictment Pursuant to the Speedy Trial

Act."  Both motions have been fully briefed by the parties and the Court heard the oral

arguments of counsel on May 21, 2008. Having reviewed and considered the parties' briefs, the arguments of counsel, and the entire record of this matter, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant William Barnwell and four other individuals -- Sandra Williamson and her husband, David Williamson; Edwin Nyhus; and Charles Jackson -- were charged in a federal indictment in January 2003 with misappropriating the assets of a labor union, the Michigan Regional Council of Carpenters (the "MRCC" or the "Union") in the form of salaries, allowances and fringe benefits paid to or on behalf of a number of Union Business Agents who worked on the construction of a new home for Mr. and Mrs. Williamson, during work time, in violation of 29 U.S.C. § 501(c); and with conspiracy to engage in this misappropriation of Union assets, in violation of 18 U.S.C. § 371.[1] At the time of construction work done on the Williamsons' house, Defendant Barnwell was the Director of the MRCC and in charge of the residential carpentry local, Local 1234.

The jury trial of Barnwell and his four co-defendants began on September 9, 2003 before Chief Judge Bernard J. Friedman. However, on September 16th the court learned that William Buffalino, counsel for Mr. and Mrs. Williamson, was too sick to continue with the trial. Therefore, on September 22nd, at the request of the Williamsons, the court

---

[1] Mrs. Williamson and Mr. Jackson were also charged in counts three and four of the indictment with making false statements to federal agents in violation of 18 U.S.C. § 1001(a)(2).

severed these two defendants and declared a mistrials as to them. The trial then continued as to Barnwell and his two remaining co-defendants, Nyhus and Jackson.

On October 8 , 2003, both sides rested, and the next day the jury heard closing arguments, received final instructions from the court, and commenced deliberations.

Shortly after deliberations began, the jury sent a note to Judge Friedman requesting the transcripts of the testimony of three witnesses. After discussing the matter with the parties, the court denied the jury's request, asking them to rely upon their memories. The jury deliberated for the remainder of the day and then retired for the night.

At approximately 8:19 p.m. on the evening of that first day of deliberations, the FBI in a separate and unrelated matter, intercepted a telephone call pursuant to a wiretap authorized by Judge Friedman. The intercepted telephone call was between two individuals who were the subject of a then 15-year-long ongoing investigation. In that phone conversation, the targets discussed the trial of "our friend" downtown. One of the targets stated that a female juror in the trial had reported that the jury vote was 8 to 4 for conviction at one point, but that it had shifted towards acquittal, 10 to 2.

The following morning the Government notified Judge Friedman *ex parte* of the wiretap conversation. AUSA Keith Corbett who was handling the investigation of the wiretap targets told Judge Friedman that he suspected that the female juror discussed by the targets was a juror deliberating in the Barnwell matter. (Corbett's suspicion was

based upon the facts that at the time, the Barnwell case was the only criminal case in the federal court at the jury deliberation stage, and the wiretap targets, like the defendants on trial, were from Macomb County.)[2] Judge Friedman decided to address the issue by meeting with the foreperson of the jury in chambers with a court reporter present.

After meeting with the foreperson Judge Friedman concluded that the wiretapped conversation did not relate to the Barnwell jury because, according to the foreperson, the jury vote was never 8 to 4. Judge Friedman solicited and obtained the numerical division of the jury as of that time (11 to 1), but not the direction in which the jury was leaning. Judge Friedman thereafter telephoned AUSA Corbett and advised him that he was not going to take any further action.

After his *ex parte* conversation with Judge Friedman, Corbett met with the Government's trial attorney and FBI agents. During this meeting, one of the agents identified one of the deliberating jurors as the sister of one of the wiretap targets. The Government's attorneys then re-contacted Judge Friedman and advised him of this discovery. However, before Judge Friedman could take any action, the jury foreperson sent the Judge a note asking to see him.

Judge Friedman then met with the foreperson *in camera* but on the record. The foreperson reported, "We have one person that's hell bent on her decision. We wanted to

---

[2] Judge Friedman subsequently decided to make a sealed record of the conversation with the government attorneys. The Government's trial attorney was not a participant in this meeting with the judge but he did know of the events surrounding the meeting and the fact that the meeting was taking place; Barnwell's trial counsel did not.

bring the law with the book [sic], but she got defensive.  I don't think she's going to change her opinion and her decision."  *United States v. Barnwell*, 477 F.3d 844, 849 (6th Cir. 2007).  Nonetheless, the judge told the jury to go to lunch and think more about the case.

After lunch and additional deliberations following the lunch break, the jury sent another note stating "Jury is hung with no possibility of coming [to] a unanimous decision."  *Id.* at 849-50.  Judge Friedman then published the note to all trial counsel and asked counsel for their views.  Barnwell's attorney stated that the jury should be allowed to be hung and counsel for Defendant Nyhus concurred.  Defendant Jackson's attorney was in favor of a modified *Allen* charge.  Government counsel expressed no view stating that the matter was within the discretion of the court.  Judge Friedman agreed with the counsel for Barnwell and Nyhus that there was no possibility of the jury coming to a unanimous decision and declared a mistrial.

Prior to the scheduled retrial, Judge Friedman denied Barnwell's and his co-defendants' post-trial motions for judgment of acquittal.  Also prior to retrial, the Government voluntarily dismissed all charges against Defendant Nyhus and the court entered an order severing Defendant Jackson so Jackson could pursue an interlocutory appeal.

Barnwell was retried along with Mr. and Mrs. Williamson.  The retrial began on April 26, 2004 and concluded on May 27, 2004 when the jury returned guilty verdicts

against all three defendants on all counts of the indictment in which they were named. On September 13, 2003, Barnwell was sentenced to two concurrent terms of probation, with the first six months to be served in home confinement. Barnwell thereafter appealed his conviction and sentence.

After filing his Notice of Appeal, Barnwell was informed for the first time about the *ex-parte* communications between Judge Friedman, the prosecution and the government agents concerning potential juror misconduct during the first trial. Barnwell relied upon those communications in bringing his appeal, arguing that the Double Jeopardy clause prevented a retrial, or in the alternative, contending that he was entitled to a new trial. *United States v. Barnwell*, 477 F.3d at 850.

On February 27, 2007, a panel of the Sixth Circuit reversed Defendant's conviction and remanded the case for a new trial. The panel held (2-1) that the *ex parte* communications between Judge Friedman and the government attorneys during the first trial violated Defendant Barnwell's constitutionally prescribed rights to due process, effective assistance of counsel, and trial by an impartial judge and jury.[3]

After the Government's petition for rehearing *en banc* was denied, the Sixth Circuit issued its mandate on September 7, 2007. The mandate was received and filed by

---

[3] The dissenting member of the panel determined that while Defendant's constitutional rights may have been violated in the first trial, he received the appropriate remedy of a second trial which raised no question of constitutional or legal impropriety whatsoever. The provision of yet a third trial, in the dissenting member's view, is therefore "legally unjustified." *United States v. Barnwell*, 477 F.3d at 854 (Daughtrey, J., dissenting)

this Court on September 14, 2007. On October 12, 2007, pursuant to 28 U.S.C. § 455, Judge Friedman disqualified himself from this case and the case was reassigned to this Court pursuant to Eastern District of Michigan L.Cr.R. 57.10(c)(1).

Due to the unavailability of Judge Friedman caused by his serious illness, the Court determined that the ends of justice were served by excluding under the Speedy Trial Act the period of time that the case remained pending before Judge Friedman prior its reassignment to this Court. Therefore, the Court entered an "Order for Excludable Time" excluding the period from September 7, 2007 through October 12, 2007. The parties also stipulated to toll the Speedy Trial Act from December 17, 2007 through March 31, 2008 and a stipulated Order was entered accordingly. In the meantime, on January 25, 2008, Defendant Barnwell filed the subject Motions to Dismiss Indictment arguing that his rights under the Double Jeopardy Clause and the Speedy Trial Act have been violated.

III. <u>DISCUSSION</u>

A.  DEFENDANT'S DOUBLE JEOPARDY CLAIM IS PRECLUDED BY
    <u>THE LAW OF THE CASE DOCTRINE AND THE MANDATE RULE</u>

The law of the case doctrine bars relitigation of issues that were decided at an earlier stage of the litigation, either explicitly or by necessary inference from the disposition of the case, unless one of three "exceptional circumstances" exists: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is

clearly erroneous and would work a manifest injustice.[4] *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (quoting *Coal Res., Inc. v. Gulf Western Indus., Inc.*, 865 F.2d 761, 766 (6th Cir. 1989); *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("*Jordan II*"); *see also Williams v. McLemore*, 247 Fed. Appx. 1, 7 (6th Cir. 2007) (where an appellate court has determined an issue of law -- either explicitly or implicitly -- a lower court may not reconsider the issue). An argument is rejected by necessary implication when the holding stated or the result reached is inconsistent with the argument. *United States v. Jordan, supra.* Although the law of the case doctrine is applied with some flexibility with regard to reconsideration of earlier decisions by the same court or a coordinate court, it is "rigidly applied to enforce a lower court's obedience to a higher court." *Williams v. McLemore, supra* (quoting *United States v. Dunbar*, 357 F.3d 582, 592 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1099 (2005); *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1996) (the doctrine of the law of the case is enforced quite rigidly to ensure obedience of a lower court to a higher court's decisions).

A complementary theory, the "mandate rule," requires lower courts to adhere to the commands of a superior court. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.

---

[4] These exceptions are "exceptionally narrow." *Williams, supra*; *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 513 n. 3 (6th Cir.2000)(citing *Hanover Ins. Co. v. American Eng'g Co., supra*). Defendant Barnwell, however, has not raised any of these "exceptional circumstances" in his motion and, in any event, none are present here.

1994). The mandate rule is, in essence, a specific application of the law-of-the-case doctrine. *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir.1999). Both doctrines "generally preclude a lower court from reconsidering an issue expressly or impliedly decided by a superior court." *United States v. Moored, supra*. Thus, upon remand of a case, the trial court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir.2006). The trial court is required to "implement both the letter and the spirit" of the appellate court's mandate, "taking into account the appellate court's opinion and the circumstances it embraces." *Id*. (citing *Brunet v. City of Columbus*, 58 F.3d 251, 254 (6th Cir.1995)).

In this case, the Sixth Circuit unequivocally determined that Defendant Barnwell should be accorded a new trial as the remedy for any and all constitutional infirmities in his first trial. The opinion of the Court of Appeals, and its Judgment and Mandate, reflect that the appellate court reversed Defendant's conviction and directed the district court to retry him. ("For the foregoing reasons, we REVERSE Barnwell's convictions and REMAND his case for a new trial." 477 F.3d at 854.) The appellate court made its retrial determination despite Defendant's explicit contention in his appeal that his indictment should be dismissed based upon the Double Jeopardy Clause. *See* Defendant's Sixth Circuit Brief [Government's Response Brief, Ex. 1]. Both Defendant and the Government, in fact, fully briefed the double jeopardy issue before the Sixth

Circuit. The Motion to Dismiss Defendant now brings before this Court consists of a near verbatim replication of the argument for dismissal on double jeopardy grounds he advanced before the Sixth Circuit.

The Sixth Circuit did not address Defendant's double jeopardy argument in its published opinion. However, to be precluded by the law of the case doctrine, it is not necessary that the appellate court expressly have addressed the issue. *United States v. Jordan, supra; see also Christianson v Colt Industries Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 2178 (1988), ("That the [appellate court] did not explicate its rationale is irrelevant, for the law of the case turns on whether a court previously decided a rule of law -- which the [appellate court] necessarily did -- not on whether, or how well, it explained the decision.")

*United States v. Jordan* is illustrative. Two appeals occurred in *Jordan*. The first time the case was before the appellate court was on the government's appeal from the district court's mid-trial dismissal of the indictment on grounds of prosecutorial misconduct. *United States v. Jordan*, 316 F.2d 1215 (11th Cir. 2003) ("*Jordan I*"). The defendants argued for dismissal of the government's appeal for lack of appellate jurisdiction, claiming that the mid-trial dismissal of the indictment operated like an acquittal which divested the appellate court of jurisdiction. Quoting 18 U.S.C. § 3731, the court determined that it had jurisdiction over the matter. (18 U.S.C. § 3731, provides for broad jurisdiction over appeals by the government from dismissals in criminal cases

"except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." *Id.*)  Although the court acknowledged the defendants' position that it lacked jurisdiction as a result of this statutory provision, the court proceeded to address the merits of the appeal.  316 F.3d at 1248.  The court reviewed each allegation of misconduct and held that the prosecutor had not been guilty of any misconduct.  *Id.* at 1258.  On that basis, the Eleventh Circuit reversed the district court's dismissal of the indictment and sent the case back to the district court for further proceedings.  *Id.*

Upon remand, the defendants filed a motion asking the district court to dismiss the reinstated indictment asserting that it would violate the Double Jeopardy Clause to retry them in light of the mistrial that had been required by the earlier mid-trial dismissal of the indictment.  *Jordan II*, 429 F.3d at 1034.  The district court denied the defendants' motion and the defendants then brought the second appeal.  *Id.*

In *Jordan II*, the appellate court applied the law of the case doctrine and affirmed the district court's denial of the double jeopardy motion.  The court first observed that in *Jordan I,* "[i]n exercising jurisdiction over the appeal, the court implicitly rejected the defendants' position that double jeopardy barred a retrial, otherwise it would have found that § 3731 applied and would have dismissed the case."  429 F.3d at 1035.  It did not matter that the merits of defendants' double jeopardy claim had not been discussed in *Jordan I*:

We did not address [defendant's argument in the earlier appeal] that the mistrial resulting from the dismissal of the indictment barred retrial under the *Oregon v. Kennedy* rule, even if that dismissal was not the same as an acquittal. We did not address that argument in so many words, *or in any words for that matter*, but we did reject it "by necessary implication," which is enough under our decisions to bring the law of the case doctrine to bear in this appeal.

429 F.3d at 1035 (emphasis added).

The *Jordan II* court was particularly persuaded that the defendants' double jeopardy argument had necessarily been implicitly rejected in *Jordan I* because the issue "was briefed and argued in the prior appeal (and on rehearing as well) and our prior opinion's discussion of jurisdiction shows that this Court was aware that it could not decide the appeal unless it disagreed with [defendants'] double jeopardy arguments." *Id.* at 1036.

The same is true here. Defendant Barnwell briefed and argued his double jeopardy argument before the Sixth Circuit. The Court of Appeals was aware that it could not order a retrial unless it disagreed with Defendant's double jeopardy argument. The mandate rule requires this Court's compliance with the appellate court's remand directive which was that this Court retry Mr. Barnwell. For all of the foregoing reasons, the Court concludes that Defendant Barnwell's double jeopardy argument is precluded by the mandate rule and the law of the case.

B.      RETRIAL OF DEFENDANT BARNWELL IS NOT PROHIBITED
        UNDER THE DOUBLE JEOPARDY CLAUSE

Even if the Court were to conclude, however, that it had the authority to entertain

Defendant's double jeopardy argument, retrial is not barred here by the Double Jeopardy Clause.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy." U.S. Const., amend. V. However, the Double Jeopardy Clause's general prohibition against successive prosecutions is not absolute. As the Supreme Court noted in *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285 (1988), "The Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Id.* 488 US. at 38, 109 S.Ct. at 289. Nor is retrial barred by the Double Jeopardy Clause where there is a "manifest necessity" for a mistrial or the defendant either requests or consents to a mistrial. *Watkins v. Kassulke*, 90 F.3d 138, 141 (6th Cir. 1996).

From its earliest days, the Supreme Court has held that a failure of the jury to agree on a verdict was an instance of "manifest necessity" which permitted a trial judge to terminate the first trial and retry the defendant. *United States v. Perez*, 22 U.S. (9 Wheat) 59 (1824). Where a jury may be deadlocked, the trial judge is permitted to exercise broad discretion in deciding whether or not "manifest necessity justifies the declaration of a mistrial. *Richardson v. United States*, 468 U.S. 317, 323-24 (1984); *Arizona v. Washington*, 434 U.S. 497, 509-510 (1978) (inability to reach a verdict has

been "long considered the classic basis for a proper mistrial.") In addition, where evidence arises before a trial court indicating that a juror may be biased, "manifest necessity" justifies the declaration of mistrial and a retrial of the case. *Arizona v. Washington, supra*, 434 U.S. at 510-11.

Defendant does not argue here that Judge Friedman did not face a jury which was genuinely deadlocked or that returning the full jury to deliberations would have produced an untarnished verdict. Indeed, Defendant consented to the declaration of a mistrial and even after learning of the *ex parte* communications and after basing his appeal on them, Defendant *asked the Court of Appeals that it order the district court to re-try him.* Instead, Defendant's motion accuses Judge Friedman and the prosecution of having "orchestrated" or "caused" the hung jury. There is no factual basis, however, and Defendant offers none, to conclude that Judge Friedman or the prosecution *caused* the deadlock.

Similarly, Defendant relies upon *Oregon v. Kennedy*, 456 U.S. 667 (1982) to argue that his consent to a mistrial was occasioned by both prosecutorial and judicial conduct. Although the Government does not rely upon Defendant's consent in defending the double jeopardy argument, the Court finds no basis for application of the *Oregon v. Kennedy* rule in this case.

In *Oregon v. Kennedy*, the Supreme Court carved out a narrow exception to the rule that where the defendant moves for a mistrial, the Double Jeopardy Clause is not a

bar to a retrial.  Under this exception, only if the conduct giving rise to the mistrial was prosecutorial or judicial conduct *intended to provoke or "goad" the defendant into moving for a mistrial* will double jeopardy bar a retrial.

The defendant in *Oregon v. Kennedy* was charged and tried for the theft of an oriental rug.  At trial, the State's expert testified as to the value and identity of the property involved.  On cross-examination, the expert acknowledged that he had once filed a criminal complaint against Kennedy but explained that no action had been taken on his complaint.  On redirect, the trial court sustained a number of objections to the prosecutor's questions seeking to establish the reasons why the witness had filed a complaint against the defendant.  After eliciting from the witness that he had never done business with Kennedy, the prosecutor asked: "Is that because he is a crook?"  At which point the court granted Kennedy's motion for a mistrial.

On retrial, the court rejected Kennedy's contention that the Double Jeopardy Clause barred further prosecution of him finding that it was not the intention of the prosecutor in this case to cause a mistrial.  Kennedy was convicted but his conviction was reversed by the Oregon Court of Appeals which sustained the double jeopardy claim because it found that the prosecutorial misconduct that had occasioned the mistrial, even if not intended to cause a mistrial, amounted to "overreaching."

The Supreme Court reversed holding that where a defendant in a criminal trial successfully moves for a mistrial, he may invoke the bar of double jeopardy in a second

effort to try him only if the conduct giving rise to the successful motion for a mistrial was prosecutorial or judicial conduct *intended* to provoke the defendant into moving for a mistrial. Since both of the courts below agreed that the prosecutor did not intend her conduct to provoke Kennedy into moving for a mistrial, the Court held that that is the end of the matter for purposes of the Double Jeopardy Clause.

Following the Supreme Court's decision, appellate courts, including the Sixth Circuit, have been very reluctant to find the intent necessary to satisfy the *Kennedy* standard. *See, e.g., United States v. Koubriti*, 509 F.3d 746, 749 (6th Cir. 2007), *cert. denied*, ___ S.Ct. ___, 2008 WL 717678 (Apr. 14, 2008); *United States v. Thomas*, 728 F.2d 313, 318 (6th Cir. 1984) (no double jeopardy bar to retrial where the Court's "review of the record leads us to conclude that none of the prosecutor's behavior here will pass the intentional-goading-into-mistrial test of *Oregon*"); *United States v. Curry*, 328 F.3d 970, 973 (8th Cir. 2003) (district court's ruling that retrial was not barred following post-trial grant of defendant's mid-trial motion for mistrial upheld on the basis that, despite the prosecutor's withholding of material impeachment evidence and improper comments during closing argument, these actions were not an attempt to goad defendant into requesting a mistrial); *United States v. Gonzalez*, 248 F.3d 1201, 1204 (10th Cir. 2001) (government's appeal of the district court's grant of defendant's mistrial motion not barred because the government's intent in introducing allegedly prejudicial evidence may have been to obtain a conviction rather than a mistrial); *United States v.*

*Strickland*, 245 F.3d 368, 384 (4th Cir. 2001), *cert. denied*, 534 U.S. 894 (2001)

(government's concealment of discoverable materials held not intended to provoke

mistrial); *Greyson v. Kellam*, 937 F.2d 1409 (9th Cir. 1991) (no double jeopardy bar to

retrial where misconduct showed the prosecutor's desire to *convict*, and not an intent to

goad defendant into moving for mistrial).

As Judge Posner of the Seventh Circuit explained in discussing *Kennedy* in *United*

*States v. Oseni,* 996 F.2d 186 (7th Cir. 1993):

> The requirement of intent is critical, and easily misunderstood. The fact
> that the government blunders at trial and the blunder precipitates a
> successful motion for mistrial does not bar a retrial. Yet the blunder will
> almost always be intentional -- the product of a deliberate action, not of a
> mere slip of the tongue. A prosecutor who in closing argument comments
> improperly on the defendant's failure to have taken the stand, thus
> precipitating a mistrial or a reversal on appeal, is no doubt speaking
> deliberately, though his judgment may be fogged by the heat of combat.
> But **unless he is trying to abort the trial, his misconduct will not bar a**
> **retrial. It doesn't even matter that he knows that he is acting**
> **improperly, provided that his aim is to get a conviction. The only**
> **relevant intent is intent to terminate the trial, not intent to prevail at**
> **this trial by impermissible means**.

996 F.2d at 188 (citations omitted; emphasis added).

In this case, Defendant simply reiterates his position concerning the impropriety of

the *ex parte* communications between the Government and Judge Friedman which have

been addressed and remediated by the Sixth Circuit on appeal. But there is absolutely

nothing in the record to suggest that Judge Friedman and/or the Government engaged in

these *ex parte* communications for the purpose of provoking Barnwell into requesting, or

consenting to, a mistrial.

For all of the foregoing reasons, the Court finds no merit in Defendant's Motion to Dismiss Based Upon Double Jeopardy.  Therefore, Defendant's Motion to Dismiss on this ground will be denied.

## C.     DEFENDANT'S RIGHTS UNDER THE SPEEDY TRIAL ACT HAVE NOT BEEN VIOLATED

18 U.S.C. § 3161(e) provides:

**(e)**  If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, **If the defendant is to be tried again following an appeal** or a collateral attack, **the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or *other factors* resulting from the passage of time shall make trial within seventy days impractical.  The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section.**  The sanctions of section 3162 apply to this section.

18 U.S.C. § 3161(e) (emphasis added).

Pursuant to Section 3161(h)(1)(G), any period of delay resulting from the transfer of a case is excludable.  Similarly, any period of time from the filing of any pretrial motion through the disposition of the motion is excludable.  18 U.S.C. § 3161(h)(1)(F).  These periods of excludable delay require no "ends of justice" finding.  *See Henderson v. United States* 476 U.S. 321, 326 (1986) (delays specified § 3161(h)(1) through (6) are

"automatic" and excludable without necessity of a motion of the parties or affirmative order of the court).  Additionally, Section 3161(h)(8)(A) provides that any period of delay resulting from a continuance granted by any judge on his own motion or at the request of either of the parties if the judge granted the continuance based upon an "ends of justice" finding.

Here, the Defendant is being retried following an appeal which became final upon the filing of the mandate in this Court on September 14, 2007.[5]  The 70-day speedy trial clock, therefore, began to run on September 15, 2007.  *See* Fed. R. Crim. P. 45(a)(1).  However, there have been since that time three events which tolled the Speedy Trial Act:

1)      The Court's January 8, 2008 Order, finding that, due to the

unavailability of Judge Friedman and the transfer of the case to this Court,

that the ends of justice would be best served by excluding from the Speedy

Trial Act  the time from September 7, 2007 through October 12, 2007 (the

---

[5]  Defendant has proceeded with his motion as if the Speedy Trial time began to run on September 7, 2007, the date on which the Sixth Circuit *issued* its mandate. However, the Sixth Circuit and a number of other circuits have reasoned that, because the district court is unable to proceed to trial until it has *received* the appellate court's mandate, the Speedy Trial clock does not begin to run following an appeal until the mandate is *received and filed* by the district court.  *See United States v. Alexander*, 983 F.2d 1068, 1992 WL 361371 (6th Cir. 1992); *United States v. Lasteed* 832 F.2d 1240, 1243 (11th Cir. 1987), *cert. denied*, 485 U.S. 1022(1988); *United States v. Long*, 900 F.2d 1270, 1276 (8th Cir. 1990); *see also Guidelines to the Administration of the Speedy Trial Act of 1974, as amended*, 106 F.R.D. 271, 280-81 (1985).  *Cf., United States v. Felton*, 811 F.2d 190, 198 (3d Cir.) (*en banc*), *cert. denied*, 483 U.S. 1008 (1987) (holding that speedy trial time begins to run upon appellate court's issuance of the mandate); *United States v. Crooks*, 826 F.2d 4, 5 (9th Cir. 1987) (same).

date on which Judge Friedman recused himself and the case was transferred

to this Court);

2)      The parties' January 9, 2008 stipulated Order tolling the Speedy

Trial Act from December 17, 2007 through March 31, 2008; and

3)      Defendant's filing of two pre-trial motions to dismiss on January 25, 2008.

Because of these tolling events, the only period of "non-excludable" time in this

case is the period from October 12 through December 17, 2007 -- a period of only 67

days.

Defendant argues, however, that more than 70 non-excludable days have passed.

Specifically, he contends that the period of time that the case remained pending before

Judge Friedman -- September 7 through October 12, 2007 -- should not be excluded from

the Speedy Trial calculation because the Court did not enter the order declaring that

period excludable until January 8, 2008.  The Order, in Defendant's view, therefore,

constitutes an impermissible "retroactive" tolling of the Speedy Trial Act.

However, as indicated above, delays specified in subsections (h)(1) - (6) of § 3161

are deemed to be "automatically" excludable and require no action whatsoever by the

parties or the court to toll the Speedy Trial Act.  *Henderson v. United States, supra*; *see*

*also United States v. Robinson*, 887 F.2d 651, 656 (6th Cir. 1989); *United States v.*

*Hernandez-Urena*, 35 F.3d 572, 1994 WL 502638 (9th Cir. 1994) (unpublished)

(because the exclusions in § 3161(h)(1)-(6) are automatic, "the district court need not

make contemporaneous findings as to their application.").  Thus, because the delay from September 7 through October 12, 2007 was due to the transfer of the case to this Court pursuant to § 3161(h)(1)(G), no order was actually necessary to toll the speedy trial time. *See United States v. Glasser*, 773 F.2d 1553, 1557 (11th Cir. 1985) (holding that delay resulting from the transfer of the case to another judge within the same district is excludable under subsection (h)(1)(G)); *United States v. Cheek*, 3 F.3d 1057, 1066 (7th Cir. 1993), *cert. denied*, 510 U.S. 1112 (1994) (same).

Barnwell argues that that subsection (G) is inapplicable here because, although this exclusion applies to a "proceeding relating to the transfer of a case," here, there was no "proceeding."  In Barnwell's view, Judge Friedman's transfer of the case to this Court was a purely ministerial act that should not be deemed to be a "proceeding" for purposes of § 3161(h)(1)(G).  He seems to believe that to fit within the parameters of § 3161(h)(1)(G), there must be a formal in-court judicial proceeding before a judicial officer or at least an application (motion) for relief made to a court of justice.  As evidenced by the case law dealing with this issue, Barnwell's interpretation of the "proceeding" language is overly technical.  *Cheek* and *Glasser* are demonstrative.

In *Cheek* the defendant was convicted by a jury and sentenced on charges of income tax evasion and willfully failing to file a federal income tax return for six years. On appeal the Seventh Circuit affirmed Cheek's conviction but the Supreme Court reversed it on the basis of erroneous jury instructions.  Accordingly, the case was

remanded to the district court (the Northern District of Illinois) for retrial.

Following the retrial, Cheek was again convicted and again appealed arguing, among other issues, that his retrial did not commence "within seventy days from the date the action occasioning the retrial had become final." 3 F.3d at 1065. At issue were 16 days relating to the intradistrict transfer of Cheek's case from one judge to another pursuant to Northern District of Illinois District Court General Rule 44, which required that when an appellate court remanded a case for a new trial, the case was to be reassigned to a new judge, unless the parties by joint motion stipulated otherwise.[6] When no joint motion was filed agreeing that the case should be returned to the original trial judge (Judge Plunkett), the case was referred to Executive Committee of the District Court and an order was entered transferring the case to Judge Zagel. No order was entered excluding the time that had elapsed from the date of filing of the mandate through the date of reassignment.

The Seventh Circuit found no issue with the lack of any order excluding the time or the absence of any "judicial *proceeding*" and held that the statutory language was

_____

[6] *See Thomas v. Sullivan*, 801 F. Supp. 65, 74 n. 5 (N.D. Ill. 1992). Northern District of Illinois General Rule 44 has since been replaced with L.R. 40.5 which similarly requires that whenever a mandate from the Court of Appeals for the Federal Circuit or the Seventh Circuit is filed with the clerk indicating that the case appealed is remanded for a new trial, the case is to be reassigned to a judge other than the prior judge, unless the parties stipulate to trial before the originally-assigned judge. *See* Local Rules for the United States District Court for the Northern District of Illinois, http://www.ilnd.uscourts.gov/home/LocalRules.aspx?rtab=localrule.
.

"broad enough on its face" to cover delays caused by such intradistrict administrative transfer procedures as those provided by the local court rules. *Id.* at 1066.

A similar conclusion was reached by the Eleventh Circuit in *Glasser*. Glasser was originally charged in an 88-count indictment for embezzlement and falsifying bank records. The district court subsequently dismissed the indictment, without prejudice, on Speedy Trial Act grounds. Glasser was thereafter reindicted on a 24-count indictment and convicted by a jury. On appeal, Glasser contended that the indictment should have been dismissed under the Speedy Trial Act. His argument was based upon a period of 8-weeks of time from February 15 through April 16, 1984 that the district court deemed to be excludable.

The first indictment on which Glasser was charged had been assigned to, and dismissed by, Judge James Paine on January 27, 1984. Glasser was arraigned on the second indictment on February 15, 1084. When the indictment was refiled, the clerk assigned the case to Judge Jose Gonzalez. The local rules of the Southern District of Florida, however, provided at the time that:

> Whenever an action or proceeding is terminated by entry of a notice of order of dismissal and is refiled without a substantial change in issues or parties, it shall be transferred to the judge to whom the original was assigned.

773 F.2d at 1556 (quoting S.D. Fla. Local R. 6(A)).

Thus, under the local rules the refiled case should have been assigned to Judge Paine instead of Judge Gonzalez.

Judge Gonzalez, however, did not realize that the case was a reindictment and the assignment error did not come to his attention until April 13 during the call of the calendar for the following week. Having discovered the mistake, the following Monday, April 16, 1984, Judge Gonzalez issued an order transferring the case back to Judge Paine and declaring all of the time that the case was assigned to him excludable under § 3161(h)(1)(G). *Id.*

On April 30, 1984, Glasser filed a motion to dismiss the indictment contending that the Speedy Trial Act's seventy day requirement had been exceeded. Judge Paine issued an order denying that motion. Judge Paine adopted Judge Gonzalez's conclusion that the time the case was pending before him was excludable under § 3161(h)(1)(G). *Id.* at 1057. Judge Paine also stated that "[t]he period of time from April 16, 1984 through April 30, 1984, which is the date which this Court accepts the transfer of [this] case is excludable time" under 18 U.S.C. § 3161(h)(1)(G). *Id.*

Glasser contested the district court's determination on appeal arguing that subsection (G) does not apply to intra-district transfers made pursuant to a local rule. *Id.* He argued that this exclusion should be read to apply only to the transfer of a case or the removal of any defendant *from another district under the Federal Rules of Criminal Procedure.*" *Id.* (Emphasis added). The Eleventh Circuit rejected Glasser's arguments and agreed with the district court's conclusion. The appellate court stated:

Glasser's argument on this score is overly technical. We read subsection (h)(1)(G) as excluding time caused by delay resulting from proceedings "relating to the transfer of a case," or "the removal of any defendant from another district under the Federal Rules of Criminal Procedure." It is therefore, broad enough on its face to cover delays by proceedings relating to the intra-district transfer of a case. Moreover, this provision would be applicable here even if construed to require that the transfer be made "under the Federal Rules of Criminal Procedure." The Rules of Criminal Procedure authorize district courts to promulgate local rules. *See* FED. R. CRIM. P. 57(a). "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with [the] rules or with any applicable statute." *Id.* § (b).. The local rule requiring the transfer in this case was lawfully promulgated under Rule 57; no argument is made that the local rule is inconsistent with the federal rules or any federal statute. Consequently, the transfer of Glasser's case was made, at least derivatively, under the federal rules. This is sufficient for the purposes of subsection (h)(1)(G).

*Id.*

*Cheek* and *Glasser* demonstrate that no motion, application, request or any other formal judicial proceeding is required to trigger application of the § 3161(h)(1)(G) exclusion from the Speedy Trial Act of any period of "delay resulting from any proceeding relating to the transfer of a case." A wholly administrative or ministerial action, such as an intra-district transfer from one judge to another effectuated pursuant to a local court rule, is sufficient. In this case, the transfer of the case from Judge Friedman to this Court was effectuated pursuant to L.R. 57.10(c). Furthermore, as *Cheek* establishes, no order contemporaneously declaring excludable delay was needed.

The conclusion reached by the courts in *Cheek* and *Glasser* is further bolstered by decisions in cases involving transfers pursuant to Fed. R. Crim. P. 20. This rule permits the transfer of a prosecution from the district where the indictment or information is

pending to the district where the defendant is arrested or held. A Rule 20 transfer does not entail any "judicial proceeding"; all that is needed to effect such a transfer is a written statement from the defendant and the written approval of the United States Attorneys of the two affected districts. Thereafter, everything is handled administratively, by the clerks of the affected courts.[7]

Notwithstanding the purely ministerial nature of the acts taken to effectuate a Rule 20 transfer, a number of courts have determined that the period of time taken to process a

---

[7] Rule 20 provides, in relevant part, as follows:

(a) Consent to Transfer. A prosecution may be transferred from the district where the indictment, or information is pending, or from which a warrant on a complaint has been issued, to the district where the defendant is arrested, held, or present if:

> (1) the defendant states in writing a wish to plead guilty or nolo contendere and to waive trial in the district where the indictment, information, or complaint is pending, consents in writing to the court's disposing of the case in the transferee district, and files the statement in the transferee district; and

> (2) the United States attorneys in both districts approve the transfer in writing.

(b) Clerk's Duties. After receiving the defendant's statement and the required approvals, the clerk where the indictment, information, or complaint is pending must send the file, or a certified copy, to the clerk in the transferee district.

(c) Effect of a Not Guilty Plea. If the defendant pleads not guilty after the case has been transferred under Rule 20(a), the clerk must return the papers to the court where the prosecution began, and that court must restore the proceeding to its docket. . . .

Rule 20 transfer is excludable under § 3161(h)(1)(G) as a "proceeding relating to transfer of the case." *See e.g., United States v. Tanner*, 941 F.2d 574 (7th Cir. 1991), *cert. denied*, 502 U.S. 102 (1992) (26-day period between defendant's signing of consent to transfer and its filing held excludable); *United States v. Martinez-Perez*, 78 F.3d 598, 1996 WL 108462 (10th Cir.), *cert. denied*, 519 U.S. 944 (1996) (21-day period of time from date of defendant's arrest through the date on which the papers relating to the defendant's transfer were docketed in the transferee court held excludable); *see also United States v. Wilson*, 720 F.2d 608, 610 (9th Cir. 1983), *cert. denied*, 465 U.S. 1034 (1984) (12-day in the ministerial transfer of papers from the Central District of California to the District Court in Alaska after defendant's motion for change of venue had been granted held excludable). *Cf. United States v. Gorson*, 732 F. Supp. 84 (D. Nev. 1990) (determining that the "proceeding" which is created by Rule 20(a) and § 3161(h)(1)(G) to transfer a case occurs only when the necessary steps for transfer under Rule 20(a), or the near equivalent thereof, have been completed. "Preliminary conduct which may hopefully lead to transfer does not constitute proceedings relating to transfer of a case." *Id.* at 85.)

Based upon the foregoing, the Court concludes that the period of time from September 7 through October 12, 2007 is excludable under § 3161(h)(1)(G).

To the extent that Barnwell makes an "improper retroactive tolling" argument, Barnwell focuses on the "ends of justice" finding made by the Court pursuant to Section

3161(h)(8)(A) and (B).  The Court determined that the ends of justice served by a

continuance for the period of time from September 7 through October 12, 2007

outweighed the defendant's interest in a speedy trial because delay was also due to the

unavailability of Judge Friedman due to illness prior to his *sua sponte* recusal from the

case.  Numerous courts, including the Sixth Circuit, have held that illness of the trial

judge justifies an ends of justice finding permitting excludable delay pursuant to §

3161(h)(8)(A) and (B).  *See e.g., United States v. Savoca*, 739 F.2d 220, 224 (6th Cir.

1984), *cert. denied*, 474 U.S. 852 (1985); *United States v. Richmond*, 735 F.2d 208, 215

(6th Cir. 1984); *United States v. Ferris*, 751 F.2d 436, 441 (1st Cir. 1984); *United States

v. Nance*, 666 F.2d 353, 358 n. 11 (9th Cir.), *cert. denied*, 456 U.S. 918 (1982); *United

States v. Corley*, 548 F.2d 1043, 1044 (D.C. Cir. 1976).  As the Sixth Circuit observed in

*Savoca*, "Illness of the trial judge was clearly intended to be considered in determining

whether [delay was excludable pursuant to § 3161(h)(8)(B) because] the failure to grant a

continuance would make 'continuation of [the] proceeding impossible.'" 739 F.2d at 224.

As Defendant notes, the issuance of retroactive orders under subsection (h)(8) is

sharply discouraged.  However, there is no absolute prohibition against such orders.

Where unusual circumstances dictate, reviewing courts have permitted retroactive

issuance of such orders.  *See, e.g., United States v. Furlow*, 644 F.2d 764, 768 (9th Cir.),

*cert. denied*, 454 U.S. 871 (1981) (delay caused by eruption of Mt. St. Helens

permissibly excluded by retroactive ends-of-justice order); *United States v. Correa*, 182

F. Supp. 2d 326, 328 (S.D.N.Y. 2001) (disruption caused by September 11 attacks permits use of retroactive orders under subsection (h)(8).)  Although Judge Friedman's illness may not equate with the events in these cases, the timing of the Court of Appeals' decision in this case, coupled with Judge Friedman's illness, the uncertainty of Judge's availability due to his ongoing cancer treatment, and his unanticipated decision to disqualify himself from continuing with this case after it had been returned to him for nearly a month, should permit the Court's exclusion of the relatively brief period from the date of the filing of Sixth Circuit's mandate through the October 12, 2007 recusal of Judge Friedman and reassignment of the case to this Court.

However, even if it were determined that the ends of justice finding made in the January 8 order was an improper retroactive continuance, such a finding of impropriety does not nullify the proper automatic exclusion of this period under subsection (h)(1)(G). *See e.g.*, *United States v. Frey*, 735 F.2d 350, 351-52 (9th Cir. 1984) (although some time was improperly excluded pursuant to retroactive ends of justice order, 123 days from date of defendant's arraignment through the date the case was transferred was properly excluded under the delay-caused-by-transfer-of-case provision in subsection (h)(1)(G)). Here, the exclusion due to transfer of the case was substantially shorter than the period in *Frey*.  In this case, less than 30 days are excluded.  Contrary to Defendant's assertions, under the circumstances, this is not an unreasonably long period of delay.

Furthermore, even if this period were deemed non-excludable, as Section 3161(e)

states, when a defendant is ordered retried following an appeal, the court retrying the case may extend the period for retrial up to 180 days if unavailability of witnesses "or other factors" make trial within seventy days impractical. In *United States v. Hernandez-Urena, supra*, the court found that such "other factors" included the appearance of new counsel for the government, difficulty in locating the retired case agent, and the temporary misplacement of case files and justified extending the period for retrial up to 180 days. *See also United States v. Stulga*, 584 F.2d 142, 144, 146-47 (6th Cir. 1978) (prior to effective date of amendment of Speedy Trial Act rendering violation of § 3161(e) 180-day retrial deadline subject to § 3162 sanctions, court applied § 3161(e) and concluded that there was no speedy trial violation where the defendant was retried following reversal on appeal of original conviction due to improper jury instructions after 122 days of non-excludable time had lapsed.) Here, the circumstances surrounding Judge Friedman's health and cancer treatment and the resulting uncertainty of his availability after the mandate was issued, the subsequent transfer of the case to this Court, and the subsequent reassignment of the case to a new AUSA, certainly constitute such "other factors" making trial within 70 days impractical. Hence, an extension of the speedy trial deadline for up to 180 days would be appropriate.

For the foregoing reasons, the Court rejects Defendant's speedy trial claims.

## CONCLUSION

For all of the reasons set forth in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Indictment

Pursuant to the Double Jeopardy Clause **[Dkt. No. 254]** is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Indictment

Pursuant to the Speedy Trial Act **[Dkt. Nos. 255, 256]**,[8] is DENIED.


s/Gerald E. Rosen
United States District Judge

Dated:  June 18, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 18, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

---

[8]  Docket No. 256 appears to be a duplicate entry of Docket No. 255.